## West Virginia Pulp & Paper Co., Appellant, v. Public Service Commission.

*Constitutional law—Act of June 3, 1915, P. L. 779—Public service commission—Title of act—Special legislation—Courts—Revival and amendment of acts—Trial by jury—Unworkable act.*

The Act of June 3, 1915, P. L. 779, by which the Superior Court is substituted for the Court of Common Pleas of Dauphin County as the court by which appeals from the findings and orders of the Public Service Commission shall be determined, is constitutional.

The act is not within the prohibition of Sec. 7, of Art. III, of the Constitution, in that it is special legislation regulating the practice and jurisdiction of the Superior Court.

The act does not contravene Sec. 26, of Art. V,. of the Constitution, which provides that all laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and power of all courts of the same class or grade so far as regulated by law and the force and effect of the process and judgment of such court shall be uniform.

The act is not repugnant to Sec. 6, of Art. III, of the Constitution, which provides that no law shall be revived and amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be reenacted and published at length.

The act does not contravene Sections 6 and 9, of Article I, securing the right to trial by jury in cases of deprivation of property.

The act does not contravene Sec. 8, of Art. XVI, securing compensation for private property taken, injured or destroyed for public use, and providing for the determination of the amount of damage in all such cases when appealed by a jury.

The act is not invalid and void on the ground that the amendments contained therein make the act as amended both "incongruous and unworkable."

Argued Oct. 19, 1915.    Appeal, No. 5, March T., 1916, by plaintiffs, from order of Public Service Commission No. 300, Complaint Docket, dismissing complaint in case of West Virginia Pulp & Paper Co.; New York and Pennsylvania Co.; the D. M. Bare Paper Co. and the York Haven Paper Co. v. The Public Service Commission of the Commonwealth of Pennsylvania, The Pennsylvania Railroad Company; Huntingdon & Broad Top Mountain Railroad Co.; Philadelphia, Baltimore & Washington Railroad Co. and West Jersey and Seashore Railroad Co.    Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.    Rule to quash appeal discharged.

Motion to quash appeal.

The motion· to quash the appeal was as follows:

The Pennsylvania Railroad Company, Philadelphia,

Baltimore & Washington Railroad Company and West Jersey & Seashore Railroad Company, intervenors in the above entitled proceeding, by their counsel, respectfully move the court to quash the appeal in the above entitled proceeding for the following reasons:

First. The appeal purports to have been taken from the finding, determination and order of the Public Service Commission of the Commonwealth of Pennsylvania to the Superior Court, under the provisions of the Act approved the 3d day of June, 1915, amending the Public Service Company Law of Pennsylvania, approved July 26, 1913, which said Act of June 3, 1915, is unconstitutional and void.

Second. That while the above appeal is taken from the finding, determination and order of the Public Service Commission to the Superior Court, the Public Service Company Law of July 26, 1913, as amended by the Act of June 3, 1915, directs in Section 18, of Article VI, that the record of the proceedings in said case shall be certified to the Court of Common Pleas of Dauphin County.

Third. That under the provisions of the said Public Service Company Law, as amended, the appellate court is to determine from the record certified to it by the commission whether or not the order appealed from is reasonable and in conformity with law, but there is no provision in said act, as amended, or in any other law of this Commonwealth, by which the record and proceedings before the Public Service Commission may be brought before, or certified to, the Superior Court.


*J. E. B. Cunningham* and *John G. Johnson,* with them *William I. Schaffer, Charles H. Bergner* and *Frederic L. Ballard,* for intervenors on motion to quash.

The amendments are, in effect, prohibited special legislation, in that (a) They regulate the practice and jurisdiction of the Superior Court in a special manner in certain cases in violation of Section 7, of Article III, of

the Constitution; and (b) Conflict with Section 26, of Article V, providing that "All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process and judgment of such courts, shall be uniform," etc.: Nobles v. Piollet, 16 Pa. Superior Ct. 386; Platt-Barber Co. v. Groves, 193 Pa. 475; Christner v. John, 171 Pa. 527; Strine v. Foltz, 113 Pa. 349; Mansfield's Case. 22 Pa. Superior Ct. 224.

The Act of 1915 amends and extends and confers the provisions of other laws without reenacting and publishing them at length: Com. v. Halstead, 1 Pa. C. C. R. 335; In re Greenfield Avenue, 191 Pa. 290; Donohugh v. Roberts, 15 Philadelphia 144; Pittsburgh's Petition, 138 Pa. 401; Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627; Lloyd v. Smith, 176 Pa. 213; Reid v. Smoulter, 128 Pa. 324.

The amendments of 1915 contravene the constitutional provisions preserving the right to trial by jury and prescribing the method of ascertaining the amount of damages where private property is taken, injured or destroyed for public use.

*Robert D. Jenks,* with him *E. B. Richards, O. H. Hewit* and *William A. Glasgow, Jr.,* for appellants on motion to quash.

*Wm. H. Keller,* Deputy Attorney General, with him, *Wm. N. Trinkle* and *Francis Shunk Brown,* Attorney General, for the Commonwealth, cited: Penna. R. R. Co. v. Ewing, 241 Pa. 581; Small v. Small, 129 Pa. 366; Com. v. Shaleen, 215 Pa. 595; Moore v. Chartiers Valley Water Co., 216 Pa. 457; Penna. R. R. Co. v. Riblet, 66 Pa. 164; Lancaster County v. Frey, 128 Pa. 593; Com. v. Moir, 199 Pa. 534; Com. v. Hyneman, 242 Pa. 244; Com. v. Butler, 99 Pa. 535; Sharpless v. Mayor of Philadelphia, 21 Pa. 147; Com. v. McComb, 39 Pa. Superior Ct. 411;

In re Sugar Notch Borough, 192 Pa. 349; Com. v. Middleton, 210 Pa. 582; Penna. Telephone Co. v. South Bethlehem Borough, 16 D. R. 878; Com. v. Beatty, 15 Pa. Superior Ct. 5; Com. v. Fisher, 213 Pa. 48; Stegmaier v. Jones, 203 Pa. 47; Gottschall v. Campbell, 234 Pa. 347; Com. v. Broad Street Rapid Transit St. Ry., 219 Pa. 11; Davis v. Moore, 50 Pa. Superior Ct. 494.

OPINION BY HENDERSON, J., December 20, 1915:

The questions involved in this case arise on an appeal of the complainants from the action of the Public Service Commission of the Commonwealth on the objections of the complainants to an increase of freight rates proposed to be charged by the railroad companies above named for the transportation of pulp wood between points within the State, which proposed rates were alleged to be unjust, unreasonable, and unjustly discriminatory. After a hearing the prayer of the petitioners was refused and the complaint dismissed. An appeal from this order was taken to the Superior Court under the Act of June 3, 1915. Thereupon the intervening companies moved the court to quash the appeal. The principal reason assigned in support of the motion was that the act referred to is unconstitutional in three respects: (a) that it is within the prohibition of Section 7, of Article III, of the Constitution, in that it is special legislation regulating the practice and jurisdiction of the Superior Court and of Section 26, of Article V, which provides that all laws relating to courts shall be general and of uniform operation and the organization, jurisdiction and powers of all courts of the same class or grade so far as regulated by law and the force and effect of the process and judgment of such courts shall be uniform, etc.; (b) that the act is repugnant to Section 6, of Article III, of the Constitution, which provides that no law shall be revived and amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, ex-

tended or conferred shall be reenacted and published at length; (c) that the act contravenes Sections 6 and 9, of Article I, securing the right to trial by jury in cases of deprivation of property and of Section 8, of Article XVI, securing compensation for private property taken, injured or destroyed for public use and providing for the determination of the amount of damage by a jury in all such cases when appealed.

Objection is also made to the act on the ground that the amendments contained therein make the amended act "incongruous and unworkable." The argument in support of the first proposition is that by the letter and spirit of the Constitution courts of this Commonwealth are divided into two general classes: appellate courts and courts of original jurisdiction, that the Supreme Court and the Superior Court are the appellate courts of the Commonwealth, that the Constitution has designated what original jurisdiction may be exercised by the Supreme Court, as provided in Section 3, of Article V; that the Superior Court was established by the Act of June 24, 1895, as amended by the Act of May 5, 1899, as an "Intermediate Court of Appeal," the jurisdiction of which was established by the said acts. The status of the Superior Court it is contended is thereby fixed, in one of the constitutional classes of courts, as a court of appeal without any original jurisdiction, except as conferred by the statute, notwithstanding which by the amendment under consideration, the legislature has attempted to confer on the Superior Court an entirely new and different kind of jurisdiction in a special class of cases, the class of cases referred to being the orders made by the Public Service Commission. Pursuant to the powers vested by law in that body, the jurisdiction thus conferred is, it is contended, original jurisdiction and to confer such jurisdiction on an appellate court is contrary "to the spirit of our Constitution," and when limited to a special class of appeals is violative of the constitutional provision above recited. A

consideration of these objections must be had in the light of numerous decisions through many years, which hold that every possible presumption is in favor of the validity of a statute and this continues until the contrary is shown beyond a reasonable doubt. It is only when the statute violates the Constitution clearly, palpably, plainly, and in such manner as to leave no doubt or hesitation in the mind that it is to be nullified. At the formation of the government the legislature was the body constituted to enact laws. Coming as it does by frequent elections directly from the people, the public will expressed by its enactments becomes the law of the Commonwealth. It is not appointed for the exercise of specially defined legislative powers but is invested with general authority to enact laws at its discretion, subject only to the limited restrictions established in the Constitution. It is within the power of the court to annul a statute, which the Constitution prohibits, but such action can only be supported when the enactment cannot be sustained under any reasonable construction.

Questions with regard to the propriety of legislation or the judicious exercise of discretion by the legislature are not matters of concern to the courts so long as the action of that body does not transgress the limits clearly prescribed by the Constitution. There is much discussion and often a wide difference of opinion as to the wisdom of many enactments, but the views of the court are not affected by considerations of this character, in determining the constitutionality of a statute. Applying the principles above stated to the objections presented in support of the motion to quash the appeal, does it clearly appear that the statute complained of regulates the practice and jurisdiction of the Superior Court in a special manner and is, therefore, a special law? It is not contended that this court is not a lawfully constituted tribunal, but because the Constitution has divided the courts into two general classes, namely, appellate courts, and courts of original jurisdiction, and the Superior

Court was established as an intermediate court of appeal, the conferring of jurisdiction on that court to hear appeals from an administrative body or commission established for the purpose of regulating public service companies, is said to be contrary to the spirit of the Constitution on the ground that the jurisdiction thus conferred is original and, therefore, not within the general purpose of the organization of the Superior Court and, further, that when this jurisdiction is limited to a special class of appeals it violates the letter of the Constitution in being special legislation. Article V of the Constitution not only provides for the several courts therein designated but also makes express provision for such other courts as the general assembly may from time to time establish and authority is therein given to the legislature to change the jurisdiction of the Supreme Court and the Courts of Common Pleas. No plainer words could be employed to express the intention to vest in the legislature the power to create new courts, not only similar to those named but also of a character and having a jurisdiction different from those set forth. No attempt was made in that instrument to define nor limit the jurisdiction of courts which might be so established. This was wisely left to the discretion of the general assembly. The expanding population, wealth, and industrial enterprise of the inhabitants of the State would render necessary from time to time new courts, exercising such jurisdictions as might be deemed proper and adapted to the public conditions. The power to create the court necessarily includes that to grant such jurisdiction as seemed to the legislature appropriate and to prescribe the procedure therein. The power to confer includes the power to divide and to add to. This power is concisely stated by Justice AGNEW in Commonwealth, ex rel., v. Hipple, 69 Pa. 9: "The Constitution having neither defined nor limited the jurisdictions of the courts named in the Constitution, or of those to be afterwards established, the power to create

new courts and new law judges carried with it the power
to invest them with such jurisdictions as appear to be
necessary and proper, and to part and divide the judicial
powers of the state so as to adapt them to its growth
and change of circumstances." The same subject is
discussed at length by Justice POTTER in Gottschall v.
Campbell, 234 Pa. 347, and by Judge HEAD in Common-
wealth v. Hopkins, 53 Pa. Superior Ct. 16, which case
was affirmed by the Supreme Court in 241 Pa. 213.
These and other cases which might be cited make it clear
that the Constitution not only permits the legislature to
make new enactments in the structure and jurisdiction
of the courts, but also to change the procedure therein,
and the history of the courts in this Commonwealth
shows that this has frequently been done. We are una-
ble to agree with the contention of the learned counsel
for the intervenors that the authority conferred on the
Superior Court by the act is original jurisdiction. It is
true, the Public Service Commission is not a court of law,
but it is invested with large supervisory authority with
respect to the regulation of public service companies
and has quasi judicial functions with respect thereto.
The duties which it performs are not within the capacity
of the Superior Court in the first instance, and juris-
diction is only had in that court when the particular
question involved has been first considered and decided
by the Public Service Commission. The action of the
latter body is made a matter of record. This record in
a particular proceeding may be removed to the Superior
Court. This is done by a method which the statute de-
scribes as an "appeal" and the subsequent proceedings
provided for have some of the features of an appeal from
a proceeding in a law court other than those arising
from actions at law. All of the cases so authorized to
be heard by the Superior Court are first heard and de-
termined by the Public Service Commission and the in-
quiry in the Superior Court is limited to the case as
found in the record of the proceedings before the com-

mission. The trial in the Superior Court is in fact, therefore, an appellate review. If it were conceded, however, that the jurisdiction thus conferred is original jurisdiction, we look in vain in the language of the Constitution for any provision which prevents the legislature from conferring the jurisdiction thus created on this court. Granted that the public service corporations constitute a distinct class of corporations, the objection that the provisions for appeal are not the same as provided for appeals from law courts is not a persuasive consideration in support of the intervenors' position. Procedure is a matter of statutory regulation if not forbidden by the Constitution, and it has never been claimed so far as we are able to discover that the regulation as to all appeals must be the same with respect to the time within which they are taken or the requirements with reference to bail and supersedeas. The provision for criminal cases might well be different from those relating to actions at law. Regulations governing appeals from decrees in equity or proceedings in the Orphans' Court need not necessarily be the same. An examination of the statutes shows that prior to the Act of May 19, 1897, regulating the practice on appeals to the Supreme and Superior Courts uniformity did not exist with reference to the time within which appeals must be taken and under the Act of 1897 several classes of appeals are recognized with respect to orders of supersedeas, and Section 12 of the act provides that in "all other classes of cases not herein otherwise provided for, the appeal shall not operate as a supersedeas unless so ordered by the court below or the appellate court or any judge thereof, etc." The fact that the appeal is taken by petition does not imply that it is only to be had on allowance of the appellate court. The word "petition" is evidently used to describe the method by which the record of the proceeding before the commission is brought into the Superior Court for the purpose of review and whether it be called à petition or an appeal is unimpor-

tant in view of the direction of the statute that the record be thus brought up and that jurisdiction of the case be thereby acquired by the Superior Court for purposes of review. There being no prohibition in the letter of the Constitution or its necessary implication, we are unable to find any support for the contention that the spirit of the Constitution prohibits the statute. There is no warrant for an appeal to the spirit of that instrument independently of language therein out of which such spirit necessarily arises. A similar argument was made in Sharpless v. The Mayor of Philadelphia, 21 Pa. 147, where the court was asked to hold that a law though not prohibited is void if it violates the spirit of our institutions. This, it was held, could not be done because it would be assuming a right to change the Constitution and to supply what the court might conceive to be its defects and to interpolate into it whatever in the opinion of the court ought to have been put there by its framers. "The Constitution has given us a list of the things which the legislature may not do. If we extend that list we alter the instrument." There is but one Superior Court. Its jurisdiction extends throughout the State. The subjects of jurisdiction are classified and therefore the conferring of jurisdiction on that court cannot be properly said to be special legislation. The jurisdiction conferred by the Act of 1895 has since been largely extended and the jurisdiction of the Supreme Court divided, but it has not been contended in the years succeeding the changes thus made, that these courts were not exercising their full and proper jurisdiction. The Public Service Commission has supervisory control over those corporations in the Commonwealth, commonly known as public service corporations. They are recognized as a class peculiarly related to the population of the Commonwealth affecting all the interests of the people to a greater or a less degree, controlling large capital; having their existence by the permission of the Commonwealth and exercising special privi-

leges by legislative grant and constituting necessary monopolies to a greater or less degree.    The reasons are obvious for recognizing them as a class of corporations over which the Commonwealth should exercise supervisory control.    The doctrine of classification has been established in many cases.    It was said in Wheeler v. Philadelphia, 77 Pa. 338, that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class comes within the constitutional prohibition. And in Seabold v. Commissioners, 187 Pa. 318, it was held that "legislation for a class distinguished from a general subject is not special, but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition.    If the distinctions are genuine the courts cannot declare the classification void, though they may not consider it to be on a sound basis." A reference to the opinion of Justice MESTREZAT in Commonwealth v. Grossman, 248 Pa. 11, will show to what an extent classification has been applied on a wide variety of subjects to which references may be added the recent opinions of President Judge RICE in Wilson v. Edwards, 32 Pa. Superior Ct. 295, and Findley v. Bryans, 58 Pa. Superior Ct. 399.    From all of which cases and many others to the same effect it is clear that the classification of public service corporations is not an arbitrary selection but rests on substantial distinctions. So far as transportation companies are concerned (and the intervenors are of that class) the Constitution itself recognizes the distinction between them and other corporations and provides in Article XVII, for the very regulation which the Public Service Commission was intended to provide as a part of its duty.    This has been done under the federal laws and under the laws of all the states.    The power heretofore existing in the courts

of the Commonwealth was to a considerable extent transferred by the Act of July 21, 1913, to the Public Service Commission.

Nor can we find greater support to the objection that the legislation is not of general and uniform operation. There being but one court of the class whose jurisdiction extends throughout the state with relation to a class of cases resting on real distinction from all other cases in which appeals are allowed to the Superior Court, the requirement of uniformity is met. A law is general and uniform if it affect in like manner all persons in the same circumstances. It is not to be understood that to be uniform and general it must operate upon every person in the State. All that is required is that every person brought within the relations provided for it in the statute is within its provisions: Winston v. Moore, 244 Pa. 447; Gottschall v. Campbell, 234 Pa. 347.

It is further contended that the act is in violation of Section 6, of Article III, of the Constitution, which forbids that a law be revived or amended or the provisions thereof extended or conferred by reference to its title only, in that it amends the Act of 1895 creating the Superior Court and the Act of 1897 extending its jurisdiction without expressly amending the statutes. It is a sufficient answer to this objection that this provision of the Constitution only refers to statutes containing amending clauses and does not relate to those acts the effect of which is to amend preceding legislation. Where an act is complete in itself and where the purpose and meaning are apparent on its face, it is not repugnant to the constitutional provision in question although it may have the effect to alter, extend or repeal a prior act. Progressive legislation would become practically impossible if it were necessary that every act recite all other acts that its operation might incidentally affect by way of repeal, modification or extension. The provision was not intended as a limitation of the power of the legisla-

ture to enact laws. Its purpose was to prevent the extending of the provisions of a statute to a new class of subjects or persons simply by reference to the title or to the number of the section or statute by which means legislation was sometimes procured in a covert and possibly deceptive manner. But where an act is complete in itself, it is not within the mischief intended to be remedied and not within the prohibition of the Constitution: Pinkerton v. The Pennsylvania Traction Co., 193 Pa. 229; Searight's Estate, 163 Pa. 210; In re Greenfield Avenue, 191 Pa. 290; Commonwealth, ex rel., v. Broad Street Rapid Transit Street Ry. Co., 219 Pa. 11; Commonwealth, ex rel., v. Van Bowman, 35 Pa. Superior Ct. 410; Davis v. Moore, 50 Pa. Superior Ct. 494.

It is also objected that the Act of 1913 as amended by the Act of 1915 offends against Sections 6 and 9, of Article I, and Section 8, of Article XVI, securing the right of trial by jury. These provisions apply to proceedings according to the course of the common law and have no reference to new jurisdictions created by statute and clothed with no common law powers. The purpose was to preserve the trial by jury wherever the common law gave it and in all other cases to let the people through the legislature provide as their judgment might suggest for the orderly administration of justice. Whatever was a subject of jury trial at the date of the Constitution is to remain inviolate but matters which were not at that time subjects of such trial and those arising under subsequent statute prescribing a different proceeding are not included: Van Swartow v. Commonwealth, 24 Pa. 131; Rhines v. Clark, 51 Pa. 96; Wynkoop v. Cooch, 89 Pa. 450; Smith v. Times Publishing Co., 178 Pa. 481. As to the cases within the constitutional provision referred to Section 29, of the Act of 1913 as amended by the Act of 1915, secures to any party the right to trial by jury of any issue of fact raised thereby or therein where such right is secured either by

the Constitution of the Commonwealth or of the United-
States.   In the case of reparation, damages and com-
pensation, appeals are not taken to the Superior Court.
The act provides that as to reparation an action may be
brought in any Court of Common Pleas for the amount
awarded by the commission and that in the case of dam-
ages and compensation appeals shall be taken to the .
proper Court of Common Pleas where the questions are
to be tried before a jury as the Constitution and statutes
provide.    Many questions will probably arise in the ap-
plication of this comprehensive legislation which are not
now observed or anticipated, but it has not been thus far
made apparent that any questions will arise on appeals
from the decisions of the commission to the Superior
Court in which issues of fact will present themselves on
which the parties are entitled to trial by jury as secured
by the constitutional provisions above recited.    It seems
clear that the questions presented on the pending ap-
peals are not of that class.

Criticism is made of the statute because no amend-
ment is made of the eighteenth section of the Act of
1913, which provides that in case of appeal the commis-
sion shall certify the record of its proceedings to the
proper Court of Common Pleas as hereinabove provided
and of the nineteenth section which provides that an al-
lowance shall be necessary from the proper Court of
Common Pleas in order that an appeal shall operate as
a supersedeas of the order appealed from.    The omis-
sion to strike out of these sections the words "common
pleas" was evidently an oversight, but when we read the
title of the act and the third section amending Section
17 of the Act of 1913 we have no doubt that the inten-
tion of the legislature is manifest to make the amend-
ments apply to the whole statute so far as necessary.
The act recites certain sections to be amended in certain
respects and proceeds "and to provide for the taking of .
appeals from the findings, determinations or orders of
the commission to the Superior Court instead of to the

Court of Common Pleas of Dauphin County; vesting in the Superior Court the jurisdiction to hear and determine said appeals which is now vested in said Court of Common Pleas of Dauphin County; the same to be subject to an appeal to the Supreme Court; and so as to make the other necessary changes due to the said substitution of the Superior Court of Pennsylvania for the Court of Common Pleas of Dauphin County as the court by which appeals from the findings, determinations and orders of the commission shall be determined." The act then proceeds in the third section to substitute the Superior Court for the Court of Common Pleas of Dauphin County and transfers the jurisdiction on appeal to the Superior Court instead of the Court of Common Pleas of Dauphin County. The title of an act is part of it and is properly used in interpreting its words: Perkins v. Philadelphia, 156 Pa. 554; Moore v. Chartiers Valley Water Co., 216 Pa. 457, and the statute is to be interpreted according to the rule which prohibits the taking of a single sentence even though it form a separate section of a statute and construing it apart from the context or without regard to the subject matter and the general purpose sought to be accomplished: Small v. Small, 129 Pa. 366. The literal construction of a section in the statute ought not to prevail if it is opposed to the intention of the legislature apparent from the consideration of the whole statute: Rhodes v. Iowa, 170 U. S. 412; Gage v. Chicago, 201 Ill. 93. It is a rule of construction that where the words of a statute are susceptible of two constructions, one of which will lead to an absurdity, the other not, the latter should be adopted though it be a liberal instead of a literal construction: Lancaster County v. Frey, 128 Pa. 593. The construction contended for by the intervenors would make the statute impossible of application so far as it relates to appeals from the orders of the commission and would defeat the obvious purpose of the legislature as expressed in the whole act. There is sufficient to show

that it was the intention to have the record certified to the Superior Court and the order of supersedeas entered in that court. We cannot say, therefore, that the statute is "incongruous and unworkable." Upon a review of the whole subject it is our conclusion that the reasons assigned by the intervenors in their motion to quash the appeal are not sufficient and the rule to quash is, therefore, overruled and discharged.