John W. Pinkerton, Appellant, v. The Pennsylvania Traction Company and The Columbia & Donegal Electric Railway Company.

*Street railways—Motor·power company—Lease—Constitutional law—Act of March 22, 1887, section 1, clause 8.*

Clause 8 of section 1 of the Act of March 22, 1887, P. L. 9, entitled " An act to provide for the incorporation and regulation of motor power companies for operating passenger railways by cables, electrical or other means," which authorizes motor power companies " to lease the property and franchises of passenger railways which they may desire to operate, and to operate said railway," is not unconstitutional, as the title of the act is broad enough to cover the power conferred in the clause.

*Street railways—Power to lease—Act of March 22, 1887.*

Under clause 8, section 1, of the Act of March 22, 1887, P. L. 9, which authorizes motor power companies to lease the property and franchises of passenger railway companies, the latter companies have the implied power to lease their roads to motor power companies, as without it the grant in the act would be nugatory.

*Constitutional law—Statutes—Re-enactment.*

The constitutional mandate as to revival, amendment and extension of acts by re-enactment at length applies only to express amendments, and does not affect those which are merely incidental to the passage of other acts, complete and valid in themselves.

*Street railways—Power to lease—Act of May 14, 1889.*

A street railway company incorporated under the Act of May 14, 1889, P. L. 211, may, under the act of March 22, 1887, lease its road to a motor power company, because the former act, containing no express prohibition of the power to lease, does not, by implication, repeal the implied power conferred by the latter act.

*Corporations—Organization — Recording certificate—Street railways — Passengers—Negligence—Action in tort—Contract—Lease.*

In an action against a corporation for damages for a tort committed while acting as a corporation, the validity of its incorporation cannot be impeached, and therefore plaintiff, in a suit against a street railway company which had leased its road to a motor power company, has no standing to aver that the motor power company was not a legal corporation by reason of its failure to record its certificate according to the provisions of the act of March 22, 1887, and that therefore the lease was void, and the street railway company liable.

*Railroads—Lease—Negligence.*

Where one railroad company leases its road to another in pursuance of legislative authority the lessee steps into the place of the lessor, and is alone liable for all negligence in the operation of the property leased.

Argued May 18, 1899. Appeal, No. 178, Jan. T., 1899, by plaintiff, from order of C. P. Lancaster Co., Sept. T., 1895, No. 45, refusing to take off nonsuit. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass by father to recover damages for death of his son, a passenger.

At the trial it appeared that the Pennsylvania Traction Company was a motor power company organized under the act of March 22, 1887. It had leased the road of the Columbia and Donegal Electric Railway Company which had been organized under the act of May 14, 1899. The boy for whose death damages was sought bought a ticket from the Pennsylvania Traction Company, and was riding on one of its cars at the time of his death. Shortly after the accident the traction company became insolvent. The court entered a compulsory nonsuit in favor of the railway company, and a judgment was recovered against the traction company for $750. The court subsequently refused to take off the compulsory nonsuit against the railway company, and the plaintiff thereupon appealed.

*Error assigned* was refusal to take off nonsuit.

*Thomas Whitson* and *B. F. Davis,* for appellant.—We sued two parties, the appellee, a corporation, and the Pennsylvania Traction Company, which, though chartered, we contend is not a corporation but a partnership association. This we had a

right to do, either jointly or separately: Bunting v. Hogsett, 139 Pa. 363; Turton v. Powelton Electric Co., 185 Pa. 406; Goorin v. Allegheny Traction Co., 179 Pa. 327.

The act of 1887 is clearly unconstitutional: Allegheny County Home's Case, 77 Pa. 77; Dewhurst v. City of Allegheny, 95 Pa. 437; Com. v. Fowler, 44 Leg. Int. 482; Com. v. Doll, 6 Pa. C. C. R. 49; Hatfield v. Com., 120 Pa. 395; Ridge Ave. Railway Co. v. Phila., 124 Pa. 219; Philadelphia v. Railway Co., 142 Pa. 484; La Plume Boro. v. Gardner, 148 Pa. 192; Smith v. Reading City Pass. Ry. Co., 156 Pa. 5.

The provisions with regard to recording the certificate being the same in the act of 1887 as in the act of 1874, the law will apply the same to one as to the other: Guckert v. Hacke, 159 Pa. 303; N. Y., etc., Bank v. Crowell, 177 Pa. 323; Smith v. Warden, 86 Missouri, 398; Mockelumne H. M. Co. v. Woodbury, 14 Cal. 427; Welland Canal Co. v. Hathaway, 8 Wend. 480; Williams v. Bank of Michigan, 7 Wend. 539; Hill v. Beach, 1 Beasley (N. J.), 31; Hanlon v. Turnpike Co., 182 Pa. 115; Childs v. Smith, 55 Barbour, 45.

The Columbia and Donegal Railroad Company is not exonerated because it leased its road to an insolvent company, even if it was duly incorporated: Hanlon v. Turnpike Co., 182 Pa. 115; R. R. Co. v. Brown, 17 Wallace, 445; Nelson v. Vt. C. R. R. Co., 26 Vt. 717.

*W. U. Hensel*, with him *J. Hay Brown*, for appellee.—The plaintiff in this case dealt with the corporation defendant as a corporation. His son having purchased a ticket from it and taken passage on its cars, he is estopped from claiming against it in any other capacity than as a corporation: Cochran v. Arnold, 58 Pa. 399; Paterson v. Arnold, 45 Pa. 410; Freeland v. Penna. Cent. Ins. Co., 94 Pa. 504; Tarbell v. Page, 24 Ill. 46; Ramsey v. Peoria M. & F. Ins. Co., 55 Ill. 311; First Nat. Bank of Salem v. Almy, 117 Mass. 476; Braintree Water Supply Co. v. Braintree, 146 Mass. 482; Pierce v. Hacke, 49 Leg. Int. 288; Leonardsville Bank v. Willard, 25 N. Y. 574; Duchess Cotton Manufactory v. Davis, 14 Johnson (N. Y.), 238; Worcester Medical Institution v. Harding & Bigelow, 11 Cush. (Mass.) 289.

The general rule is that a valid lease, made under express

statutory authority, will exempt the lessor from all liability for negligence of the lessee, which has full control and management of the railway: Booth on Street Railway Law, 570; Ray's Negligence of Imposed Duties, 547; Phillips v. Northern Railroad of New Jersey, 62 Hun, 233; Thompson on Corporations, sec. 5885; Ditchett v. R. R. Co., 67 N. Y. 425; Norton v. Wiswall, 26 Barbour, 618.

OPINION BY MR. JUSTICE MITCHELL, October 6, 1899:

1. By clause 8 of section 1 of the Act of March 22, 1887, P. L. 9, motor power companies were authorized " to lease the property and franchises of passenger railway companies which they may desire to operate, and to operate said railways." It is claimed by appellant that this clause is unconstitutional because it contains a subject not indicated in the title, to wit: the lease of their roads by passenger railway companies. The title of the act is "An act to provide for the incorporation and regulation of motor power companies for operating passenger railways by cables, electrical or other means." As the very object of the incorporation of the motor company indicated by this title is to operate a passenger railway, it must have some means of obtaining such railways to operate. It was clearly not intended that they should build, nor necessarily to buy, for in either case they would become, not merely operators, but passenger railway companies themselves. The most obvious, if not the only, other way in which they could operate a road was to lease it. As was said by McPHERSON, J., in Smith v. Reading Pass. Ry. Co., 2 Pa. Dist. Rep. 490, " In 1887 traction companies were a new device. The legislature decided to permit their creation . . . . and to give them as a field of action the street railways of the commonwealth." And it may be added that motive power was then a subject of active discussion. There was a strong popular demand for cheap and rapid transit. The old forms of horse power were yielding to the objections of expense and want of speed, cables had been tried with varying success, and the use of electricity was beginning to take practicable shape. Passenger railway companies themselves, whether prosperous or struggling, had their capital and their business bound up in the old ways, and the whole subject of improvement was passed over as a matter of investigation

and experiment to the newly invented motor companies. The title of the act gave notice that they were incorporated with power to operate passenger railways, and an obvious way to do so was by lease of already existing roads. The objection to the constitutionality of the clause in question is wholly untenable.

Nor is there any weight in the objection that the passenger railway had no power to lease its road. The power to take a lease is expressly given to the motor companies and the corresponding power in the passenger railway companies as owners to give a lease is necessarily implied. Without it the grant in the act would be nugatory. That the grant was intended to be general, and not confined to the very few passenger railways that had by their charters express power to lease, is well shown by McPherson, J., in Smith v. Reading City Pass. Ry. Co., 2 Pa. Dist. Rep. 490. On appeal to this Court, 156 Pa. 5, we followed our usual practice and declined to decide the merits of the case until the facts were developed at the final hearing. The dissolution of the preliminary injunction was therefore affirmed, and we see no reason now to doubt the correctness of that result.

The objection that the powers of passenger railways cannot be indirectly enlarged is fully answered by the established principle that the constitutional mandate as to revival, amendment, extension, etc., of acts by re-enactment at length applies only to express amendments, etc., and does not affect those which are merely incidental to the passage of other acts, complete and valid in themselves: In re Greenfield Ave., 191 Pa. 290.

In addition to this, the present appellee, the Columbia and Donegal Railway Company, was incorporated under the Act of May 14, 1889, P. L. 211. That act contains no express prohibition of the power to lease, and as such power was already granted by necessary implication, so far as concerns motor power companies as lessees, under the act of 1887, the later act cannot be construed as an implied repeal of a power already existing and not necessarily inconsistent with the act's own purpose.

2. Appellant further argues that the Pennsylvania Traction Company was not a legal corporation, by reason of its failure to comply with the provisions of the act of 1887 by recording

its certificate, and therefore the lease in question was void. On this point it is enough to say that it was a de facto corporation, acting as such under letters patent, and its charter could not be impeached collaterally: Cochran v. Arnold, 58 Pa. 399; Spahr v. Farmers' Bank, 94 Pa. 429; Johnston v. Elizabeth Building & Loan Association, 104 Pa. 394. It made the lease in its corporate capacity, was sued as a corporation, and though this action is in tort, its necessary basis is in the rights of a passenger, by virtue of the contract, in a passage ticket bought from the railroad as an acting corporation.

The cases cited by appellant are not in conflict with this settled principle. Guckert v. Hacke, 159 Pa. 303, was an action against individuals as partners, and they sought to defend on a charter of incorporation issued but not recorded until after the contract by plaintiff with defendants personally. It was held that exemption from individual liability did not begin until notice of the incorporation was given by recording the certificate as required by the statute. It was, however, expressly conceded, referring to Spahr v. Farmers' Bank, supra, that actual knowledge by the plaintiff and dealing as with a corporation would have estopped him notwithstanding the failure to record. New York, etc., Bank v. Crowell, 177 Pa. 313, was also an action against defendants as partners, and the same rule was applied again. The distinction in the cases and the underlying reason are thus stated by the late Justice TRUNKEY in Eliot v. Himrod et al., 108 Pa. 569, 580: "When a charter of incorporation has been actually granted, and certain persons are in possession of the rights thereby conferred, though the charter might be declared void by the court in a proper proceeding, its validity cannot be determined in a collateral suit: Spahr v. Farmers' Bank, 94 Pa. 429. The formation of a limited partnership association is materially different from the creation of a corporation. Such association is treated in the statute as a partnership which upon the performance of certain acts shall possess specified rights and immunities. . . . When they are sued for debt and claim immunity founded on such statement it is competent for the plaintiff, either to point to a fatal defect on its face or to prove that an essential requisite though formally stated is falsely stated."

3. The last point made by appellant is that even if the Penn-

sylvania Traction Company was incorporated the lease to it by the Columbia and Donegal Railway did not exonerate the latter from liability. But such a proposition is contrary to all the established rules of law in regard to lessor and lessee. The latter steps into the place of the former, is substituted for him, and assumes all subsequent liabilities incurred in the operation of the property leased. That is the very ground on which it is held that a corporation cannot lease or transfer any part of its franchises without express legislative or charter authority: Nelson v. Vt. C. R. R. Co., 26 Vt. 721. If a lease did not exonerate the lessor, but left his liability unaffected and only added the liability of the lessee, no one could possibly be hurt by it, or have any standing to complain. It is conceded that a franchise is a duty imposed as well as a privilege granted by the state, and the duty cannot be avoided or transferred to another without the state's authority. But when such authority is shown, as in the act of 1887, to motor power companies to assume by lease the operation of passenger railway companies, it must be construed as a grant with all the ordinary attributes of such authority between lessor and lessee, unless the statute or the contract makes a reservation of continuing liability in the lessor. Neither is alleged in the present case.

Neither Van Steuben v. Central R. R. Co. of N. J., 178 Pa. 367, nor Hanlon v. Turnpike Co., 182 Pa. 115, has any bearing on the present question. In the former the lessee was a New Jersey company, and it was held that the statute authorizing railroads to lease their lines did not extend to a foreign corporation; and in the latter it was said that there was no evidence of authority to make the lease. The remarks on this subject must therefore be taken as applied to the state of facts then before the court.

In other states there is some conflict in the cases, and some difference of opinion among the text writers as to the weight of authority. But as is well said in 5 Thompson on Private Corporations, sec. 5884 *n*, after stating the admitted rule that if the lease is not valid there is a continuing liability of the lessor, "Some of the courts state the doctrine loosely without any apparent regard to the question whether the lease was lawful or unlawful. . . . But by running back through the decisions of

these courts on the subject, it will generally be found that in the first case stating the doctrine, stress was laid on the fact that the legislature had not authorized the railroad company to assign its franchises, or devolve its public duties upon another person or corporation." This points out clearly the source of most of the conflict in the cases. Two of them are specially relied on by the appellant, and were cited in Hanlon v. Turnpike Co., supra, Nelson v. Vt. C. R. R. Co., 26 Vt. 717, and R. R. Co. v. Brown, 84 U. S. 445. In the former it nowhere appears that the lease was authorized by law, and in the latter the railroad was operated jointly by the lessee and the receiver of the lessor, and the passage ticket which was the basis of the action was issued in the name of the lessor company. On the general subject, see Booth on the Law of Street Railways, sec. 425, Pierce on Railroads, 285, Patterson on Railway Accident Law, secs. 130, 131, and 19 Am. & Eng. Ency. of Law, 891, note.

After consideration of both views we are of opinion that the settled principles of law and the decided weight of authority are in favor of the rule that where a lease is duly authorized by law there is no further liability of the lessor for negligence of the lessee in the operation of the road.

Judgment affirmed.