# Gilbert's Estate.

*Constitutional law—Constitution of Pennsylvania, art. III, secs. 3, 6, 7—Decedents' estates—Intestacy—Widow's share—Exemption laws—Title of act—Republication—Extension of previous statutes—Act of April, 1, 1909, P. L. 87—Method of procedure.*

1. The Act of April 1, 1909, P. L. 87, regulating the descent and distribution of the estates of intestates, does not offend against secs. 3, 6 or 7, of art. III, of the constitution. This act is not an exemption law.

2. The title of an act need not be a general index to the contents of the act, but it is sufficient if it relates to one general subject, no matter how the details may be multiplied, provided they are subordinate to the general purpose of the act and germane to its provisions.

3. An act, complete in itself, which applies an established method of procedure, whether it be by common law, or·statute, or joint operation of both, to a new class by general reference only, does not violate the constitutional provision as to republication, though it may operate to some extent as an extension of a previous statute.

4. The Act of April 1, 1909, P. L. 87, is not a local or special law and therefore not within the inhibition of sec. 7, of art. III, of the constitution.

Argued March 9, 1910. Appeal, No. 47, Jan. T., 1910, by Anna B. Foreman, from decree of O. C. Franklin Co., No. 47, of 1909, dismissing exceptions to appraisement in Estate of Henry C. Gilbert, deceased. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Exceptions to widow's appraisement. Before Gillan, P. J. The facts appear in the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions.

*J. A. Strite*, for appellant.—The act violates sec. 3, art. III, of the constitution: Detweiler's App., 44 Pa. 243; Hufman's App., 81 Pa. 329; Baskin's App., 38 Pa. 65.

The act violates sec. 6, art. III, of the constitution: Titusville Iron Works v. Oil Co., 122 Pa. 627; Com. v. Dougherty, 39 Pa. Superior Ct. 338.

*Sharpe & Elder* and *W. T. Omwake*, for appellee.—It is not necessary that the title of an act should be a complete index to its contents: Com. v. Lloyd, 2 Pa. Superior Ct. 6, confirmed in 178 Pa. 308; Hoffa v. Person, 1 Pa. Superior Ct. 357.

An act which is complete in itself, the purpose and full scope of which are apparent on its face, is valid, although it may operate to alter, extend or repeal a prior act or may provide for the means of carrying its provisions into effect by reference to a course of procedure established by other acts of the legis-

lature: In re Greenfield Ave., 191 Pa. 290; Parrish v. Wilkes-Barre, 9 Kulp, 201.

OPINION BY MR. JUSTICE ELKIN, March 28, 1910:

In the court below and here it was and is attempted to be shown that the act of 1909 relating to the descent and distribution of the estates of intestates is unconstitutional. It is contended that the act offends against secs. 3, 6 and 7 of art. III of the constitution. If the act was passed in disregard of any one of these constitutional requirements it must fall, but the learned court below was of opinion that these provisions of the organic law were not contravened and that the act was a valid exercise of legislative power. We concur in this conclusion for the following reasons: Section 3 of art. III relates to the title of a bill and provides that no bill except general appropriation bills shall be passed containing more than one subject, and that the subject shall be clearly expressed in the title. It is difficult to understand upon what theory the contention can be sustained that the act of 1909 is in contravention of this constitutional provision. This act amends sec. 1 of the act of 1833 and the title of the later act recites totidem verbis the title of the amended act and indicates in general language the subject and nature of the amendment. This would seem to be a strict compliance with every requirement and there is no decided case in which there is even a suggestion that anything more is necessary to make a valid title to an act. It has been decided over and over again that the title need not be a general index to the contents of an act, but that it is sufficient if it relates to one general subject, no matter how the details may be multiplied, provided they are subordinate to the general purpose of the act and germane to its provisions. The title to the act of 1909 fully meets these requirements. It relates to the descent and distribution of the estates of intestates and everything contained in the act is germane to this general purpose.

The second contention is no more tenable than the first. No attempt is made in the act of 1909 to amend or extend the provisions of the act of 1833 by reference to its title only, but

sec. 1 of that act is set out and recited in full and then republished at length in the act as amended. This is the uniform practice and the proper method of amending an old law. It is argued, however, that the provision of the act as amended which relates to the procedure for setting aside the $5,000 in value of property in the same manner as the widow's exemption is set aside under the act of 1851, is not set out and republished as the constitution requires. This argument is predicated upon the theory that the act of 1909 is an exemption law, and that in no proper sense can it be construed as an act relating to the descent and distribution of the estates of intestates. The difficulty with this contention is that it is right in the face of the express provisions of the act itself. The act of 1833 relates to the descent and distribution of the estates of intestates, and while it has been on the statute books for more than three-quarters of a century no one has ever called it an exemption law. We do not see how it can change its character because in 1909 the legislature amended the old law so as to give the widow of a husband dying intestate and without issue a larger share of his estate. The title to the act of 1909 declares that it is an act relating to descent and distribution, and we do not see how the courts can say that the legislature was mistaken and did not intend it to mean what it says. It is not an exemption law and was not intended as such. It is true that the setting aside of the property which passes to the widow under this act is according to the method provided by the act of 1851, but this has only to do with the procedure and does not affect the right of inheritance which is conferred by other portions of the act as amended. We think this clearly comes within the rule recognized in many cases that an act complete in itself, which applies an established method of procedure, whether it be by common law, or statute, or joint operation of both, to a new class by general reference only, does not violate the constitutional provision as to republication, though it may operate to some extent as an extension of a previous statute: In re Greenfield Ave., 191 Pa. 290; Pinkerton v. Traction Co., 193 Pa. 229; Woolen Machinery Company v. Browne, 206 Pa. 543.

The third contention is without merit. The act of 1909 is not a local or special law, and therefore not within the inhibition of sec. 7 of art. III of the constitution. It is a general law applicable to a general class and relates to all members of that class. It is a classification based upon natural and proper distinctions and one that has been recognized from the beginning of our state government. The descent and distribution of estates is primarily a legislative question. The legislature has the power to say in what manner, and to whom, and in what proportions, estates shall descend, and this power having been properly exercised in the act of 1909 we can see no reason why its provisions should not be enforced in accordance with the legislative direction. That it is not an exemption act and was not intended so to be, clearly appears in the express provisions of the act which at the very outset provides that "the real and personal estate of a decedent, whether male or female, remaining after payment of all just debts and legal charges, which shall not have been sold, or disposed of by will, or otherwise limited by marriage settlement, shall be divided and enjoyed as follows." It is only the real and personal estate remaining after payment of all just debts and legal charges that is made the subject of descent and distribution under the subsequent clauses relating to the widow. The widow takes nothing under this act until the debts and legal charges have been provided for. Hence in no proper sense can it be said that it is such an exemption as is provided for by the act of 1851. The debts of the intestate must first be paid out of his estate, and when this is done descent and distribution follow according to the provisions of the act of 1909. It is argued that if the widow's share is set aside by the appraisement the rights of creditors may be defeated, but this argument is without merit because the rights of creditors must always be protected by the courts and the personal representatives must see to it that the debts are paid before any distribution is attempted to be made. Ordinarily the personal representatives have a year in which to settle an estate, and as a general rule it would be the part of wisdom to delay the distribution of the share of the widow until this

period has arrived.  However, if there are no debts, or if all debts and charges are paid, there does not seem to be any good reason why the distribution should not be made within the one-year period.  Again, the debts of a decedent are a lien upon his property for a period of two years after his death, and if the widow should take any property before a final distribution of the estate she would take it subject to these liens which could be asserted against the estate even after the share of the widow had been set apart.

Assignments of error overruled and decree affirmed at costs of appellant.